**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | | |
|---|---|---|
| MARGREATHA HEIN and VOLGA GERMAN RESEARCH, LLC, | ) ) | |
| Plaintiffs, | ) ) | Case No.  6:24-CV-01126- |
| v. | ) ) ) | |
| BRENT MAI, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Dr. Brent Mai has built a professional academic career and a series of businesses by trolling the Internet and copying the research of others in the area of Volga German genealogy. Much of the material he has appropriated over the years does not belong to him. His excuse for this prolific plagiarism and copyright infringement is that the material he copies is "merely facts." These two words do not begin to describe the judgment, research, collection, sifting, selection, translation, compilation, and extensive combing of possible sources followed by a written original expression of the material so compiled. Despite complaints about his activities, he did not seek legal advice until 2024 and persists in these activities to this day.

Mai's motion should be denied because each of the issues Mai raises is the subject matter of contested material issues of fact. In addition, the motion relies on misstated facts and a misreading of the law. 1) Plaintiffs have sustained injury and are entitled to damages and equitable relief under all four counts of the complaint sounding in copyright infringement of visual and textual material, false endorsement under the Lanham Act, and common law unfair competition. Mai is mistaken in his belief that a specific dollar amount of economic loss must be proved for any

1

of the claims. 2) It is a vigorously contested issue of material fact that Hein's textual materials are not "mere facts" but extensive compilations based on judgment, collection, transformation, translation, and original expression and therefore proper subject matter for copyright protection which Hein has sought and obtained. 3) Mai's extensive verbatim copying and paraphrasing of 107 of Hein's textual compilations registered for copyright does not qualify for fair use under Copyright law. 4) Hein's claim for false endorsement for Mai's admitted and repeated false designation of her as a "contributor" or "researcher" for him or his website has placed her in a false light and resulted in harm to her reputation for which she is entitled to compensation and equitable relief. 5) Volga German Research LLC ("VGR LLC") is properly before the court and entitled to relief as the manager and funder of Plaintiffs' website, owning a URL and a bank account which funds a substantial stream of expenditures in commerce. 6) Mai has ignored the fundamental "discovery rule" in copyright cases as the starting date for tolling the statute of limitations. Further, he has admittedly republished the infringing materials in their entirety on a new website in 2023 tolling the statute of limitations. Finally, even if his arguments were to be accepted as to certain of the materials, he copied most of infringed materials within the strictest reading of the three-year statute. 7) Mai's argument about statutory damages for infringement of Hein's photos is moot, as Hein is not seeking such damages. Doc. 59 at 16-17. On this claim, Hein seeks and is entitled to equitable relief, actual damages, and attorneys' fees for infringement of her photos. Actual damages should be awarded based on a theory of unjust enrichment because Mai used and continues to use the existence of his website and its contents to leverage his claimed expertise to obtain or promote his translations, tours, speaking engagements, and positions at academic institutions, all of which result in substantial income. A prevailing party is entitled to attorneys' fees under copyright law. 17 U.S.C. § 505.

**RESPONSE TO PLAINTIFF'S "UNCONTROVERTED FACTS"**

1.      Plaintiff Hein is an amateur genealogist, with an interest in researching and sharing her research into the history of Volga Germans. She does not attempt to make any money from research or her work with the Volga German community.

**RESPONSE**: Uncontroverted for the purposes of Mai's motion.

2.      Dr. Mai is the Dean of Libraries at Wichita State University. Prior to that post, he occupied similar posts at the University of North Florida ("UNF"); Fairfield University ("Fairfield"), and Concordia University in Portland, Oregon ("Concordia"). At all these posts he was heavily involved in researching and sharing information on the Volga German colonies and the spread of the residents of those colonies. For more than thirty years, Dr. Mai has written about, and spoken about the Volga German community, and over time, he has become one of the foremost recognized authorities in this area.

**RESPONSE**: Uncontroverted for the purposes of Mai's motion.

3.      At Concordia, Dr. Mai founded an institute to study the Volga German diaspora and culture. As part of this program, Dr. Mai created a website to share information that he was uncovering.

**RESPONSE**: Uncontroverted for the purposes of Mai's motion.

4.      When Dr. Mai left Concordia, his interest in the community remained with him, as did his research into that area. As a result, at his next stop, Fairfield, he built a new website and shared his research there. Subsequently, his research and website traveled with him to Florida, and now to Wichita State University ("WSU"). The current iteration of the website can be found at volgagermaninstitute.org. The information is freely shared, and Dr. Mai receives no income from the presentation or maintenance of the website. Like Hein's, it does not advertise or have a paywall.

**RESPONSE**: Controverted in part. While it is uncontroverted that Mai published a new website while he was at each of the institutions for which he worked after he left Concordia, he did not merely publish "his research" on those websites. When he was at Concordia, the university owned the website, as evidenced by its display of a copyright notification on each page of the site. Many individuals contributed research to Concordia. When Mai left Concordia, he took with him all the research that was published on the Concordia website and subsequently published it on the websites he created at each of his new posts. Deposition of Brent Mai taken on January 24, 2025, attached hereto as Ex D ("Mai Dep") 76:1-78:24, 86:13-88:4.

5.    Hein and Dr. Mai collaborated on research topics over the years. Prior to 2020, Hein routinely and expressly granted Dr. Mai the permission to share her research on his website.

**RESPONSE**: Controverted. Mai's record citations do not support his assertion that Hein "routinely" granted him permission to share her research on his website. In the testimony excerpts to which Mai cites, Hein was asked about a few specific research collaborations. In the testimony immediately following the excerpts to which Mai cites, Hein rejected the notion that she "routinely" granted him permission and explained that there were at most a few specific instances where he either sought or was granted permission. Deposition of Margreatha Hein taken January 21, 2025, attached hereto as Ex C ("Hein Dep") 92:9-93:6.

6.    Following Concordia's closure in 2020, Hein gained administrative control over the website originally created at Concordia University, which now can be found at volgagermans.org.

**RESPONSE**: Uncontroverted.

4

7.      Hein then began registering compilations of the conclusions of her research with the Copyright Office. On July 23, 2024, she asserted a claim that Dr. Mai was violating her copyright in these materials.

**RESPONSE**: Uncontroverted.

8.      Hein took photos of villages or churches in Germany in 2016. Subsequently, Dr. Mai posted some of these images to his website. The photos credited Hein as the source of the photo. Hein registered a trademark in 2023. Dr. Mai promptly removed the images. Hein has not identified any damages from Dr. Mai's display of the photos, which she "licenses" for free to her LLC for display on her website.

> **RESPONSE**: Controverted in part. The fourth sentence makes no sense. Hein registered several copyrights, not a single trademark. The sixth (final) sentence is immaterial to this case. As set forth in the Pretrial Order, the only monetary remedy Hein seeks for Mai's infringement of her copyright-registered photos is an award based on unjust enrichment, not actual damages. *See* Doc. 59 at 16.

9.      The materials over which Hein claims a copyright consist of nothing more than facts that she identified through her genealogical research into the Volga German colonists. The information that she presents is all about what happened, when it happened, and where it happened. That information consists of their name, birth dates, when, where and who they wed, and children that they had, along with a few other facts found in these records. Everything that appears in her copyrighted material has some support in some records she reviewed.

> **RESPONSE**: Controverted in part. Mai is conflating the individual pieces of biographical data within the informational write-ups that Hein publishes with the informational write-ups themselves. It is not accurate to state that Hein's published works consist of "nothing

more" than those pieces of data. The informational write-ups that Hein publishes, and for which she claims copyright protection, are compilations of information that Hein obtains and organizes through the exercise of judgment, selection, confirmation, translation, and preparation of a written document and are, according to Hein's designated expert, Dr. Kenneth Crews, eligible for copyright protection. Declaration of Dr. Kenneth Crews attached hereto as Ex B ("Crews Dec."), ¶ 15-19.

10.     The facts shown by Hein are facts that she gleaned largely by accessing electronic copies of old church registers on the German website Archion, and then combing those records to find and translate the information she sought.

RESPONSE: Controverted. The testimony excerpt to which Mai cites relates to one specific part of Hein's research regarding one specific person and their family. Even with respect to that one research project, Hein testified about sources she used other than the Archion.de website. Ex C, Hein Dep 66:4-70:16. In any event, there's no support in the cited testimony for the conclusion suggested by Mai in this paragraph.

11.     The facts identified by Hein are displayed generally in the manner that they were displayed on the original Concordia website, before Hein became the administrator.

RESPONSE: Controverted. There is nothing in the testimony excerpts cited by Mai that supports the allegations in this paragraph.

12.     Dr. Mai would receive notice of the postings, and often would compare the postings with the information that his website displayed on the particular family. If additional facts were stated, Dr. Mai would repeat those facts. In doing so, he would use his own phraseology: As Hein stated: "I – so I didn't repeat the typical phraseology of – you know, both Dr. Mai and I – Dr. Mai has his style of doing it. I have my style of doing it * * * ."

**RESPONSE**: Controverted in part. The first two sentences are uncontroverted. Regarding the third sentence, however, although the quoted language appears in Hein's deposition testimony, Mai has taken it out of context. Hein made the statement while comparing her published work with Mai's translation of Russian census records; she was not, as suggested in the paragraph, comparing her published work with Mai's subsequent infringing use on his website.

13.    When Dr. Mai relied upon Hein's research, he would identify her as a "researcher" or "contributor."

**RESPONSE**: Uncontroverted for the purposes of Mai's motion. However, Hein has identified at least four instances where Mai has copied Hein's materials without attribution to her. Declaration of Margreatha Hein attached hereto as Ex A ("Hein Dec") ¶ 10.

14.    Hein agrees that she does not own the exclusive right to information that she published, such as when her research subjects were born, when they were baptized, and when they died.

**RESPONSE**: Controverted. The testimony excerpt does not support the purported factual allegation in this paragraph. In this portion of Hein's deposition, she was asked about one specific sentence in one of Hein's registered works in comparison to a similar sentence in one of Mai's uses on his website. In that context, Hein agreed she did not own the exclusive right to the individual bits of biographical data—i.e., the dates of birth, baptism, and death—included in that sentence. Ex C, Hein Dep 61:6-63:6.

15.    Hein does all her Volga German work as a hobby, and makes no money from it. Her website and Facebook page are public and unrestricted. She does not advertise on either her

Facebook page or website. She does not receive income for her research. She does not receive compensation for speeches she may present at Volga German gatherings.

**RESPONSE**: Uncontroverted.

16.     Mai, on the other hand, does have some Volga German-related income. Dr. Mai has translated numerous Russian census documents covering the Volga German colonies, and on occasion sells these translations. Dr. Mai has also led tours to areas of Germany or Russia related to the Volga Germans, and has received compensation for those efforts. Although the scheduled trips may appear on Dr. Mai's website under the "events" tab, they are otherwise unrelated to the website.

**RESPONSE**: Controverted in part. Uncontroverted as to the first three sentences of this paragraph. The fourth sentence is controverted, however, because there is no factual support in the record citations offered by Mai for his conclusory statement that the scheduled trips that appear under the "events" tab on Mai's website "are otherwise unrelated to the website."

17.     Mai's use of the information taken from Hein's research is not commercial. Its purpose is educational. Dr. Mai's website displays thousands of surnames, and posts information about the genealogy of tens of thousands of people. The mission of the website is "To document the cultural manifestations of the German-speaking minority that lived along the Volga River in Russia from 1764 to 1941 and their descendants."

**RESPONSE**: Controverted in part. Uncontroverted as to the third and fourth sentences of this paragraph. The first two sentences are controverted, however, because they are nothing more than self-serving conclusory statements that are inconsistent with the uncontroverted

facts set forth by Mai in paragraph 16, *supra*. *See also* Plaintiffs' Statement of Additional

Facts, ¶¶ 54 and 55, *infra*.

18.     Hein agrees that Mai's translation and sale of Russian census records does not harm

her in any way.

**RESPONSE**: Uncontroverted.

19.     Hein also agrees that Mai's organizing and conducting tours related to Volga

Germans does not prevent her from engaging in that activity. She is not interested in organizing or

conducting tours.

**RESPONSE**: Uncontroverted.

20.     Hein professed to have no knowledge about either her or Dr. Mai's reputation in

the community. As stated by Hein: "I cannot speak to what other people's relative opinions are of

myself and Dr. Mai. I do not know what everyone in the universe thinks individually about myself

or Dr. Mai, so I cannot speak to other people's opinions." Hein does not have any idea of a number

that she claimed to have enriched Dr. Mai with because he cited her as a contributor, and has no

idea as to how to determine such a number. When asked if her reputation in the Volga German

community has diminished by anything Dr. Mai did, Hein truthfully answered: "I don't know."

She has had no basis for concluding her reputation was harmed.

**RESPONSE**: Controverted. Mai cherry picks sound bites from Hein's testimony and

offers them out of the context in which the words were spoken. In both sections of the cited

deposition testimony, Hein was speaking about the relative (or comparative) reputations as

between her and Mai. Meanwhile, in neighboring portions of the testimony not cited by

Mai, Hein explains why she believes her reputation is or may be harmed by the association

with Mai that is implied by the manner in which he refers to her on his website. Ex C, Hein Dep 81:16-82:21, 83:6-14, Ex B, Crews Dec ¶ 29.

21.    Hein had not claimed "false endorsement" because of anything that Dr. Mai did until after she talked with her attorney who told her about the existence of false endorsement claims.

**RESPONSE**: Uncontroverted.

22.    Plaintiff Volga German Research LLC is a shell LLC with Hein as its sole member. It owns no property, other than "owning" the website address for Hein's website and a bank account. It does not, and does not plan to engage in commerce. It is not the exclusive licensee of Hein's copyright. When it took over the website address from Concordia University it received no assignment of rights to the website. Volga German Research LLC does not own any copyrights in its own name. Volga German Research LLC is involved only because it "owns the website address and pays all of the expenses." Volga German Research LLC suffered no financial loss because of anything that Dr. Mai did.

**RESPONSE**: Controverted in part. The first sentence is uncontroverted, except to the extent that Mai's use of the adjective "shell" is intended to suggest that the company is being used for an improper purpose. The second sentence is controverted; as the cited testimony plainly shows, VGR LLC owns the website address and a bank account, into which Hein makes capital contributions. The third sentence is controverted; in the testimony immediately after the excerpt cited by Mai, Hein plainly states that VGR LLC engages in commerce through the expenses it incurs to maintain the website. Ex C, Hein Dep 6:19-23; Ex B, Hein Dec ¶ 7. The remainder of this paragraph is uncontroverted for the purposes of Mai's motion.

23.    The Complaint was filed with the District Court of the District of Kansas on July 23, 2024.

**RESPONSE**: Uncontroverted.

24.    The Wayback Machine is an internet archive that captures website pages.

**RESPONSE**: Uncontroverted.

25.    The Wayback Machine has captured twenty-nine (29) of the alleged infringement claims published on Dr. Mai's website before July 23, 2021.

**RESPONSE**: Uncontroverted that the Wayback Machine captures reflected in Mai's exhibits B1-29 show that the identified infringing materials were published by Mai on his website at UNF at one point in time before July 23, 2021.

26.    Hein alleges Dr. Mai published eight infringing photographs that are the subject of Copyright Registration VA 2-378-772.

**RESPONSE**: Uncontroverted.

27.    Hein admits Dr. Mai published the photos at issue "for a long period of time, at least 3-4 years".

**RESPONSE**: Uncontroverted that Mai published the infringing photos on several of his websites for a long period of time.

28.    The Wayback Machine has captured seven out of the eight photographs on Dr. Mai's website before July 23, 2021.

**RESPONSE**: Uncontroverted that the Wayback Machine captures reflected in Mai's exhibits C1-7 show that the identified infringing photos were published by Mai on his website at Fairfield or on his website at UNF at one point in time before July 23, 2021.

29.    Dr. Mai posted the photographs before November 25, 2020.

11

**RESPONSE**: Uncontroverted for the purposes of Mai's motion.

30.    The Wayback Machine captures are of Dr. Mai's websites before July 23, 2021, of the content within Hein's Copyright Registrations TXu-2-214-876, TXu 2-228-751, and TXu 2-240-833, TXu 2-192-325, TXu 2-200-735, TXu 2-204-934, and VA 2-378-771.

**RESPONSE**: Uncontroverted for the purposes of Mai's motion.

## ADDITIONAL MATERIAL FACTS

31.    Hein is an accomplished, widely respected expert in Volga German genealogy. As a descendant of the Volga Germans, she has dedicated years to researching, compiling, and publishing original works that include genealogical compilations, translated historical records, family profiles, and unique photographic documentation. Ex A, Hein Dec ¶¶ 2-3, Hein Dec Ex 1, Hein CV (P-001900 to P-001901); Ex D, Mai Dep 140:19-141:16.

32.    Hein publishes her work through the VGR Website (www.volgagermans.org), the VGR Facebook Page, and a related blog. Ex A, Hein Dec ¶ 4.

33.    Dr. Kenneth Crews, an internationally recognized authority on copyright law, has provided an expert opinion on this matter. Ex B, Crews Dec ¶ 1-8, Crews Dec Ex 1, Crews Dec Ex 2.

34.    On the VGR website, Facebook Page, and related blog, Hein presents highly specialized material that requires careful selection, translation, verification, arrangement, compilation, and narrative construction — efforts that go well beyond the mere recitation of facts. Ex A, Hein Dec ¶ 5; Ex B, Crews Dec ¶ 19 and Crews Dec Ex 1 (pp. 22-24); Ex D, Mai Dep 134:4-135:3.

35.    Volga German Research, LLC ("VGR LLC"), is an Illinois limited liability company solely owned by Hein. Ex A, Hein Dec ¶ 6; Ex C ("Hein Dep") 4:18-5:10.

36.     VGR LLC serves as the publishing entity and administrative backbone of Hein's work, holding the website domain, managing site operations, funding software and technical support, paying for access to proprietary research databases and resource materials, and underwriting Hein's research-related travel and conference activity. Ex A, Hein Dec ¶ 7, 12; Ex C, Hein Dep 5:11-6:23.

37.     While the VGR Website and social media accounts are freely accessible to the public, Plaintiffs have a proprietary interest in controlling how, where, and by whom Hein's original works are used. Ex A, Hein Dec ¶ 8; Ex B, Crews Dec ¶ 13

38.     Mai has deliberately copied and published Hein's 8 copyrighted photographs registered under U.S. Copyright Registration VA 2-378-771 on various institutional and personal websites he maintained — including at Fairfield University, the University of North Florida, and Wichita State University. Complaint (Doc. 1) ¶¶ 37, 39, 40, 41; Answer (Doc. 6) ¶¶ 21, 23, 24, 25; Mai Dep 105:12-110:20, Dep Exs 50-53; Ex B, Crews Dec ¶ 20, 32a, Crews Dec Ex 3.

39.     Mai systematically and deliberately copied verbatim or paraphrased over 100 textual works protected by ten separate U.S. Copyright registrations, dating from 2020 through early 2024. Ex B, Crews Dec ¶¶ 21, 32b, Crews Dec Ex 4; Ex D, Mai Dep 138:16-19.

40.     In his report, Dr. Crews prepared 9 detailed comparisons and reviewed and adopted 98 other comparisons showing that 107 of Hein's registered works were either copied verbatim or paraphrased into derivative works on Mai's site. Ex B, Crews Dec ¶¶ 21, 32b, Crews Dec Ex 4.

41.     In his report, Dr. Crews further concludes that Hein's works are eligible for copyright protection. Ex B, Crews Dec ¶¶ 15-19.

42.     In his report, Dr. Crews opines that Mai's use is not protected by the fair use doctrine, given the extent, purpose, and nature of the copying. Ex B, Crews Dec ¶¶ 22-29.

43.     On Mai's website, Hein's name appears more than 300 times, always presented in ways that falsely suggest she is a researcher, contributor, or affiliate of Mai's platform, when in fact she has no such connection. Doc. 1 ¶ 83; Doc. 6 ¶ 42; Exhibit E, Responses to Plaintiffs' First Set of Interrogatories Addressed to Defendant, Response 4 and Exhibit 3 thereto; Ex D, Mai Dep 39:13-17, 41:8-17, 135:8-17, 138:5-19, 139:19-140:14; Ex B, Crews Dec ¶¶ 29-30.

44.     Mai never cites to the VGR Website, the VGR Facebook Page, or the related blog. Ex D, Mai Dep 39:13-17, 138:5-11.

45.     These repeated references by Mai to Hein as a researcher or contributor have benefited Mai. Ex D, Mai Dep 140:2-11, 141:5-16.

46.     These repeated misrepresentations by Mai about Hein's relationship with Mai and his website have damaged Hein's reputation as an independent authority and created the false appearance of endorsement or approval. Ex C, Hein Dep 20:10-21:15, 81:16-82:14, 82:22-83:14, 85:2-17; Ex B, Crews Dec ¶¶ 29-30.

47.     After Mai left Concordia in mid-2016 to work at Fairfield University, he published a new website, which he populated with research he took from Concordia's Volga German website. At some point prior to 2020, Concordia wrote to Mai objecting to his use of its copyrighted materials on his new website at Fairfield University. Mai ignored Concordia, and that institution ceased doing business before taking any further action. Ex D, Mai Dep 78:4-80:25, Dep Ex 43; Doc. 6, Counterclaim ¶ 2.

48.     In January 2020, both Hein and fellow researcher Steven Schreiber sent written objections to Mai, demanding he cease copying their proprietary materials, which objections Mai ignored. Ex D, Mai Dep 63:8-64:22, Dep Ex 39.

49.    In late 2023, Hein discovered for the first time that Mai's website could be searched using the term "Maggie Hein." Previously she understood only that one could search by the surname of the Volga German individuals researched. When she ran this search in November 2023, she found 339 references to her name. Reviewing these references one by one, she learned for the first time of the extent and verbatim nature of Mai's continuing copying and that he was copying photographs. At no time prior to November 2023 was she aware or could she have been aware that Mai had copied almost all of the textual materials she had posted between 2017 and the date of her discovery. Nor was she aware or could she have been aware that Mai had copied 20 photographs from her Facebook page and website. Ex A, Hein Dec ¶ 13.

50.    In late 2023, Hein formally raised concerns in letters she sent to UNF and WSU. Doc. 6, Counterclaim ¶¶ 6, 7 and Ex 1 (Doc. 6-1) and 2 (Doc. 6-2); Ex D, Mai Dep 51:21- 52:11, Dep Ex 35.

51.    Mai admits he did not seek legal counsel any time about objections to the content of his website prior to Hein's letters to UNF and WSU. Ex D, Mai Dep 64:8-22, 78:4-24, 84:10-18, 92:15-20.

52.    Shortly after Hein's late-2023 letters, UNF shut down Mai's faculty website page. Doc. 1 ¶ 59; Doc. 6 ¶ 36.

53.    Also shortly after Hein's late-2023 letters, WSU required Mai to remove all institutional affiliations from his website, including the WSU logo and his faculty email address, unless formal agreements were secured (which Mai has never obtained). Ex D, Mai Dep 30:16-32:10, 33:8-34:12, Dep Exs 25, 27.

54.     Mai's professional profile, which prominently includes his website including its infringing content, formed a significant part of the basis for his hiring at Fairfield, UNF, and WSU. Ex D, Mai Dep 8:13-22, 47:11-48:16, 57:14-18, 58:21-59:3, 70:1-4, 72:11-16, Dep Exs 21, 33.

55.     Mai uses the site—and the reputational advantage he gains from it—to promote speaking engagements, paid translations of Russian census documents, and organized tours related to Volga German history, all of which reflect commercial gain tied to his online reputation. Ex D, Mai Dep 115:9-17; 116:10-11, 117:10-121:9, 121:24-123:4, 126:1-18, 127:8-131:11, Dep Ex 56.

56.     Hein never gave Mai permission to publish her proprietary textual works or photographs, aside from at most a few limited, specific research collaborations. Ex C, Hein Dep 92:9-93:6; Ex D, Mai Dep 69:1-8.

57.      Hein's copyrighted works — both photographic and textual — meet the standards for statutory damages and actual damages under the Copyright Act, with 69 textual works eligible for statutory damages and 38 additional textual works and 8 photographs eligible for relief based on unjust enrichment. Ex B, Crews Dec ¶¶ 31, 32c, 32d.

58.     Hein and her LLC filed a lawsuit virtually identical to the one before this court in the Northern District of Illinois on May 1, 2024, followed by a voluntary dismissal to resolve jurisdictional concerns. Exhibit F hereto, NDIL ECF Nos. 1, 13, 14.

59.      Hein and VRG LLC filed the lawsuit in this district on July 23, 2024. Doc. 1.

## ARGUMENTS AND AUTHORITIES

### I.     Plaintiffs have standing for each of their claims

Plaintiffs have set forth facts sufficient to establish standing to bring each of their claims. Mai appears to suggest that Plaintiffs must demonstrate specific monetary damages such as loss of revenue or sales. Alternatively, Mai seems to be operating under the illusion that a website that

does not charge for access to its content is a proper target for theft of intellectual property and the identity of the author. Mai is wrong. Evidence of specific economic loss is not required to establish Plaintiffs' standing to bring any of their claims. And Mai can be liable for copyright infringement, false endorsement under Section 43(a), and unfair competition even if Plaintiffs do not charge for access to their website.

The parties and their websites are directly competitive with each other in delivering information about Volga German genealogy. In support of his motion, Mai argues "Both Dr. Mai and Hein operate free website dedicated to educating people about [Volga Germans.] … Both the Volga German Institute website and the Volgagermans.org website provide information showing the movement of people from Germany to Russia." Doc. 54 at 2-3. In light of the nature of these websites as admittedly direct competitors, plaintiffs' standing to bring the common law unfair competition claim also rests on the harm to Hein's reputation, loss of attribution to plaintiffs and their website, and the resulting loss of traffic to their website experienced when the extensive information copied from plaintiffs' website without any reference to its source usurps their right to be recognized and viewed.

In the matter before the court, plaintiffs' claims deal with activities occurring within the United States cognizable under the federal copyright and trademark laws and a pendant state common law count. They have presented facts that support those claims. Mai is disseminating the infringing and false information through the world wide web on a daily basis. Plaintiffs have standing and are entitled, under their respective claims, to damages and equitable relief for infringement, false statements, loss of attribution, reputational harm, and loss of control over Hein's creative works. They have experienced injury and have standing to bring these claims seeking actual and statutory damages and equitable relief.  Since Hein clearly has standing under

the federal statutory claims, both plaintiffs have standing to demonstrate that violations of these statutes constitute common law unfair competition.

### A.    Hein has standing to pursue her copyright claims

Proof of specific economic loss is not required for a valid claim of copyright infringement. To establish a claim for copyright infringement, a party must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Vasquez v Ybarra* 150 F. Supp 2d 1157, 1165 (D.Kan. 2001); *Jacobsen v. Deseret Book Co.* 287 F.3d 936, 942 (10th Cir. 2002); *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1614 (10th Cir. 1996); see also *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 379 (1991). Once infringement is shown, the claimant is entitled to injunctive relief and statutory or actual damages. 17 U.S.C §§ 502, 504. The Copyright Act entitles a copyright owner to recover statutory or actual damages for any timely claim. *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 372 (2024). In fact, the very purpose of the availability of statutory damages in copyright infringement cases underscores the fact that specific economic harm need not be demonstrated.

> Statutory damages are intended to vindicate the statutory policy of discoursing (sic) infringement. … And the court (or jury) has complete discretion to award any damage amount that is just. Case law has developed some guidelines for awarding statutory damages. They are: the Defendant's state of mind, the expenses saved by Defendant as a result of the infringement, the amount of damages necessary to deter[] other infringement.

*Tomelleri v. Quick Draw, Inc.*, 2016 WL 2755835, *3 (D.Kan. May 12, 2016).

Further, the Supreme Court has held the purpose of copyright is to foster creativity; financial reward is an incident of the core purpose. "The primary objective of copyright is not to reward the labor of authors, but 'to promote the Progress of Science and useful Arts.' Art. I, § 8, cl. 8." *Feist*, at 349 (citation omitted).

For the purposes of establishing standing, Mai has admitted copying and publishing plaintiff's photographs and textual works registered for copyright. Nothing cited by Mai requires a showing by Hein of specific loss of sales for the copyright claims.

### B.    Hein has standing to pursue her Lanham Act claim

Hein has standing to bring a false endorsement claim under Section 43(a) of the Lanham Act which does not require a showing of specific economic loss. Mai admits that he uses Hein's name on his website multiple times—more than 300—calling her a "researcher" for and "contributor" to his website. Additional Fact No. 43. But Hein does not do research for Mai, and she is not a contributor to his website. This is a false statement on its face and sufficient to support a claim of reputational harm. Additional Fact Nos. 45, 46.

A claim of harm to reputation is sufficient for standing for a claim of false endorsement under Section 43(a) of the Lanham Act. "Thus, to come within the zone of interests in a §1125(a) false-advertising suit, a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark Int'l, Inc. v. Static Control Components, Inc.* 572 U.S. 118, 119 (2014) (citation omitted). Indeed, actual harm is not even necessary for one who is aggrieved to bring a claim—Section 43(a) plainly states that a civil action may be brought by "any person who believes he or she is **or is likely to be** damaged" by the false association. 15 U.S.C. §1125(a) (emphasis added). Hein has explained the reputational injury she either has suffered or is likely to suffer because of the false association with Mai's website. Response to Uncontroverted Fact No. 20 (Ex C, Hein Dep. 81:16-83:14); Additional Facts No. 46. Hein has standing to pursue her Lanham Act claim; Mai's motion on this basis must be denied.

### C. Plaintiffs have standing to pursue their state law unfair competition claim

Plaintiffs agree with Mai's assertion that if Hein has standing to bring her 43(a) claim, they both have standing to bring a common law unfair competition claim. "In Kansas, common law unfair competition requires the same elements as under Section 43(a) of the Lanham Act." *Triple-1 Corp v. Hudson Associates Consulting Inc.* 713 F. Supp 2d 1267, 1287 (D. Kan 2010) Motion at 21[1]

### D. The cases cited by Mai are inapposite

The following cases cited by defendant in support of his standing argument are inapposite and not relevant. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992), addresses an unrelated type of claim (environmental harm) and finds a lack of standing because the activities complained of are extra territorial (Sri Lanka). Three other cases cited by defendant, *TransUnion LLC v. Ramirez* 594 U.S. 413 (2021), *Gubala v. Time Warner Cable, Inc.* 846 F.3d 909 (7th Cir 2017) and *Muransky v. Godiva Chocolatier, Inc.* 979 F.3d 917 (11th Cir 2020), are all class action lawsuits which, broadly stated, address "bare procedural violations"[2] under various statutes about requirements for vendors with respect to the treatment of customer personal information. In these three cases, some or all plaintiffs were unable to show harm as there was no dissemination of the personal information. None of these cases stands for the principle that a plaintiff claiming a violation substantive rights under the Copyright Act, §43(a) of the Lanham Act, or unfair competition must demonstrate a loss of dollars for standing. The matter before this Court is based on substantive statutory or common law claims for which both reputational harm, injunctive relief,

---

[1] The Triple-1 case is not a false advertising/false endorsement case, but one for, among other things, infringement of unregistered trademarks under 43(a).

[2] *Spokeo, Inc v. Robins* 578 U.S. 330, 331 (2016).

and actual and statutory damages have been claimed. There is no issue of lack of territoriality, and the information at issue is clearly and admittedly being widely disseminated by Mai.

*Callahan v. Ancestry.com Inc* 2021 WL 783524 (not 78354 as cited by defendant) (N.D. Cal. March 1, 2021) offered by Mai is not controlling precedent, nor is it a copyright, false endorsement/advertising, or unfair competition matter. More importantly, in a later iteration, *Callahan v. PeopleConnect, Inc*., 2021 WL  5050079 (N.D. Cal. Nov. 1, 2021), plaintiffs were permitted to proceed under a state statutory claim Cal Civ Code §3344(a) prohibiting the use of name, likeness, etc. without permission to advertise or sell goods or services. In so holding, the district court found that: "If a defendant uses a plaintiff's name and/or likeness to advertise, then it can reasonably be inferred that the name and/or likeness has some economic value, even if small." *Id*. at \*14.

## II.    Hein's registered Textual Materials are the proper subject matter of Copyright

The law is clear that while "raw" individual facts are not entitled to copyright protection, compilations of facts are entitled to copyright protection. As the Supreme Court explained in *Feist*:

> This case concerns the interaction of two well-established propositions. The first is that facts are not copyrightable; the other, that compilations of facts generally are. Each of these propositions possesses an impeccable pedigree. … [I]t is beyond dispute that compilations of facts are within the subject matter of copyright. Compilations were expressly mentioned in the Copyright Act of 1909, and again in the Copyright Act of 1976.

499 U.S. at 344-5 (citations omitted). The Court further elaborated:

> To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble or obvious" it might be. Originality does not signify novelty; a

work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.

*Id.* at 345 (citations omitted).

At the very least, it is a matter for the trier of fact to determine whether Hein's textual materials are the proper subject matter of copyright protection. She has presented evidence that those materials are the proper subject of copyright protection: judgment, collection, organization, compilation, and translation are involved in preparing and presenting her copyright protected materials. Her expertise in the review of Volga German records to select the appropriate information for a piece about a particular settlor in a particular village is substantially different than going to an alphabetical phone book and selecting various entries. Additional Fact Nos. 31, 34. Dr. Crews has opined based on his considerable expertise and experience that the Hein materials registered for copyright are proper subject matter of copyright protection. Additional Fact No 41.

Hein has raised a sufficient question of material fact to overcome Mai's argument that the textual materials he copies are "mere facts." Mai presents a kind of skeletal comparison of the format of the Hessler piece that Hein published with the Hessler piece that Mai copied from Hein's piece with modest paraphrasing. When presenting the skeletal comparison, Mai neglects to mention the fact that the Mai piece was copied from Hein. There are many ways to express this set of genealogical facts. For instance, one could present a series of lists rather than a written paragraph, e.g. lists of sons, daughters, birthdates, death dates, baptismal dates. One could create a genealogy tree.  Instead Mai admittedly chose to track Hein's pieces as she publishes them and copy her original written expression of those facts, gleaned by Hein's exercise of judgement, collection, sifting, translation, and original expression, verbatim or with limited paraphrasing. (Uncontroverted Facts # 12 and Response thereto.) The precise extent of copying and paraphrasing

by Mai is set forth in 107 detailed comparisons which are exhibits to the Crews Report. (Ex B, Crews Dec ¶ 21, Crews Dec Ex 4 (charts based on comparisons in Report, Ex B-1 to B-9, D-1 to D-98).

A number of courts have issued opinions on the originality of compilations and found them to be sufficiently original to be both the proper subject matter of copyright and infringed. In finding copyright infringement of plaintiff's selection and arrangement of topics on Medicaid taken directly from the Medicaid regulations, the court in *Budish v. Gordon*, first opined that plaintiff's compilation was sufficiently original to merit copyright protection, stating:

> Although Plaintiff's Tables are composed almost entirely of pre-existing material--most of which came from the Governor's Report--Plaintiff clearly selected and arranged the material for his Tables in an original manner. Even a cursory comparison of Plaintiff's Tables and those in the Governor's Report demonstrates how Plaintiff chose pertinent data and discarded what he felt was unnecessary data to create his own original Tables.

784 F. Supp. 1320, 1333-34 (N.D. Ohio 1992). In finding infringement, the court stated:

> Obviously, Plaintiff may prove copying by demonstrating that Defendants took his protected expression verbatim. This is not the only method of proving copying, however. Plaintiff may also show that the Defendants had access to his work and that they produced a work which is substantially similar to his.

*Id.* at 1333 (citations omitted). See also *Infogroup, Inc. v. DatabaseLLC*, 956 F.3d 1063, 1066 (8th Cir. 2020) (database copying case in which the Eighth Circuit affirmed a multimillion-dollar jury award for copyright infringement of a compilation where a jury could reasonably find that the minimum degree of creativity was present).

All that is required for a denial of summary judgment on this issue is to raise an issue of material fact with respect to the copyrightability of Hein's material, which Hein has done.

### III.   Defendant's wholesale taking of Hein's text material registered for Copyright is not fair use

At the outset, it does not appear that defendant is posing fair use as a defense to his copying of Plaintiffs' photos.  Motion at 18-20.  Plaintiffs agree that an analysis of defense of fair use requires that application of four factors set forth in §107 of the Copyright Act (17 U.S.C. §107):

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

Addressing the first factor, Mai would have the Court believe that his website is purely non-commercial and educational.  If for the sake of argument, this were true, the Supreme Court in *Feist* has made it clear that the fundamental purpose of Copyright law is to foster creativity, financial reward being incidental. See p. 18 *supra*. However, this is not the case. While Mai does not charge for access to his website, almost all of his income is related to or dependent on that website. Additional Fact Nos. 54, 55. He claims that "[a]t all [university] posts he was heavily involved in researching and sharing information on the Volga German colonies and the spread of the residents of those colonies." Uncontroverted Fact No. 2. He touted his Volga German activities and website in his solicitation of his current position at WSU. Doc 21-3; Additional Fact No. 54. Therefore, his Volga German website is actively connected to his university career and business endeavors. Additional Fact Nos. 54, 55.

Even "nonprofit educational use does not translate into automatic qualification as fair use." Nimmer §13F.05. In finding that this factor weighed in a plaintiff's favor although distribution of

the infringed material was for educational purposes and free of charge especially where the defendant did not seek permission, the Ninth Circuit stated:

> This court has often articulated the principle that a finding that the alleged infringers copied the material to use it for the same intrinsic purpose for which the copyright owner intended it to be used is strong indicia of no fair use. (*Citations omitted*) (the scope of fair use is constricted when the original and the copy serve the same function).

*Marcus v. Rowley*, 695 F.2d 1171, 1175-6 (9th Cir. 1983). See also *Harper & Row Publishers, Inc. v. Nation Enterprises* 471 U.S. 539, 562-63 (1985).

 Mai's website has admittedly been his ticket to three different university positions at Fairfield, UNF, and WSU. The website with all of its plagiarized and infringing pieces advertises his overseas tours, results in paid expenses to speaking engagements, supports the sale of his numerous translations of Russian census records, and is a substantial basis for his own assertion that "he has become one of the foremost recognized authorities in this area." Motion at p.7. Hein suggests to this Court that the purpose of Mai's website is predominantly commercial. In all events, a decision on this factor is one for the trier of fact.

The second factor, the nature of the copyrighted work, has been addressed in some detail by both parties in the section on the copyrightability of Hein's work. At this point, Hein has registered her works and has provided evidence that those works are sufficiently original to be the subject matter of copyright. She has provided evidence that Mai has copied her copyrighted material. While the precise "nature" of the material may be a matter for the trier of fact, it is one on which there is a material dispute of fact.

The third factor, the extent and substantiality of the use, clearly and admittedly favors Hein. Mai admittedly has "taken" or "converted" or "copied" virtually all of the material that Plaintiffs have published on their Facebook page and website since 2017. Uncontroverted Fact No. 12; Doc.

54 at 19-20.  The issue is not what percentage of Mai's website it is, but what percentage of Hein's materials have been copied. As the Court held in *Viper Nürburgring Record LLC v. Robbins Motor Co., LLC*,

> In general, it does not constitute a fair use if the entire work is reproduced.' 4 Nimmer on Copyright § 13.05[A][3].[3] Here, there is no dispute that Defendants published the photographs in their entirety.

2019 WL 4256372 at *9 (D. Kan. Sept. 9, 2019).

The fourth factor, the effect on the value of Hein's work, is again addressed by Mai as a purely "dollars and cents" question. The value of Hein's work rests in the reputation that she has established and continues to establish in the community of Volga German researchers. "The primary consideration under factor four is whether defendant's utilization functions as a market substitute for plaintiff's work." 4 Nimmer on Copyright § 13F.08. If her material is taken in its entirety by Mai and Mai never cites to her website but instead calls her his researcher or contributor, he has effectively destroyed or diminished the independent value of her website, her research, and her reputation to persons seeking information on Volga German genealogy research. If consumers determine that all of Hein's research materials appear either verbatim or marginally paraphrased, Hein has lost entirely her market for her information.

Thus, there are material questions of fact in this matter about whether the fair use defense is applicable and if it is, additional material facts at issue about whether it presents an adequate defense to Hein's claim of copyright infringement of her textual materials. Even if, for the sake of argument, Mai took Hein's materials for educational purposes, which is contested, the copying done by Mai was neither minimal nor transformative, undercutting any fair use defense.

---

[3] Current Nimmer citation is 4 Nimmer on Copyright §13F.07[A][1].

### IV.    Plaintiffs' Lanham Act and Unfair Competition claims are adequately plead and supported by evidence

Mai misstates or misunderstands the law relating to a claim of false endorsement/association under Section 43(a) of the Lanham Act. To prevail in a 43(a)(1)(A) claim for false endorsement or false association, Hein must prove that Mai:

1. Uses a false or misleading representation of fact (i.e., Hein is a researcher or contributor to Mai or his website)
2. In interstate commerce (i.e., on a website made available throughout the world that also advertises tour opportunities)
3. In connection with services (i.e., a website with genealogy data)
4. When the false or misleading representation of fact is likely to cause confusion, or to cause mistake, or to deceive as to
   a. the affiliation, connection, or association of Hein to Mai or his website, or,
   b. the sponsorship or approval of Mai's website by Hein
5. Hein believes that she is or is likely to be damaged.

McCarthy on Trademarks and Unfair Competition, Fifth Edition §28.15; see by analogy McCarthy §27.27 on false advertising (Lanham Act §43(a)(1)(B) cited in *Suntree Technologies, Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1348–1349 (11th Cir. 2012)/

Plaintiffs have placed before this Court sufficient material facts in issue to meet these elements. (1) To anyone accessing his website, Mai falsely and misleadingly describes Hein as his "researcher" or a "contributor" to his website. Both of these statements of fact are on their face untrue as Hein is neither. (2) Mai's website is in interstate commerce. (3) Mai's website is a service, albeit a free one. (4) Mai's statements about Hein falsely suggest Hein is associated with or approves Mai's website. (5) Hein has alleged reputational harm as a result of these false statements by defendant.

The *Suntree Court* further states: " We agree with the Sixth Circuit's opinion in *Johnson v. Jones,* 149 F.3d 494 (6th Cir.1998), that where "the defendant has taken the plaintiff's product and has represented it to be his own work[,]" the first five factors of the likelihood of confusion test

are irrelevant." *Id.* at 503. And the *Johnson* court, in holding for plaintiff on a 43(a) claim in a case

not dissimilar to this one, found:

> Rather, the defendant has taken the plaintiff's product and has represented it to be
> his own work. It is difficult to imagine how a designation of origin of a product
> could be more false, or could be more likely to cause confusion or mistake as to the
> actual origin of the product. *We need not inquire about the distinctiveness or
> secondary meaning of the trademarks involved, because the trademarks are not the
> issue. .... (emphasis added)*
> Furthermore, it is obvious beyond dispute that by taking Johnson's name and seal
> off of the plans and replacing them with his own, Tosch intended for people to
> assume that the plans were his, and not Johnson's. Indeed, this Court is hard-pressed
> to imagine what effect these actions could possibly have other than to convince
> anyone who looked at the plans that they were Tosch's work. Few are the cases
> demonstrating a more obvious and imminent likelihood of confusion.
> For these reasons, the district court was correct to find Tosch liable under the
> Lanham Act for false designation of origin.

*Johnson*, 149 F.3d at 503.

The district court has held that the same standard applied in *Brave Law Firm, LLC v. Truck*

*Accident Lawyers Group, Inc.*:

> To establish Article III standing, a 'plaintiff must have (1) suffered an injury in fact,
> (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that
> is likely to be redressed by a favorable judicial decision.'

2018 WL 3122172 at *3 (D. Kan June 26, 2018) (footnote omitted). And this is exactly what Mai

does, puts his own name on Hein's work and makes her his researcher or contributor, refusing to

cite to plaintiffs' website. He strips plaintiffs of their domain name, reputation in the field, and

independent research activities. There is nothing contradictory about the fact that Mai never once

cites to Plaintiffs' competitive website. It is a deliberate effort to block access to and make invisible

an alternative source of relevant Volga German research information. Mai simply sits in his office,

waits to be notified of another post by Hein, downloads the post, and reposts it either verbatim or

with slight paraphrasing on his own website.

Mai continues in this section of his Motion to emphasize the "non-commercial" nature of the parties' websites. Plaintiffs reiterate that both websites operate on the world wide web placing both of them squarely in the flow of commerce. Again, Mai seems to confuse the need for specific economic measures to place the activities of the parties in commerce. Both operate in commerce, although Mai's is ultimately a for profit operation in his Volga German activities (salary, tours, translations, travel) and plaintiffs are not for profit. Despite not seeking to earn money from their activities, Plaintiffs are definitely in commerce, paying for a URL and copyright registrations, having a bank account, and spending substantial sums on hard copy research materials, subscription websites, technical support for a website, and travel for research and to attend conferences. Uncontroverted Fact No. 22 and Response; Additional Fact No. 36.

In support of his motion, Mai cites cases that are irrelevant to Hein's claim. They are either cases about "straight" trademark infringement or free speech. Doc. 54 at 21-24. None is a false advertising/false endorsement case.

Finally, whether the activities of the parties are for profit or not-for-profit, the websites clearly compete. Both are directed at persons interested in Volga German history and genealogy. Both individual parties travel, speak, present, and post on their respective websites directed at the same consumer group. Both seek on a regular basis to present new information, in Hein's case developed by her and in Mai's case taken from plaintiffs and numerous other websites. Under these circumstances, Mai passing Hein's work off as a part of his own research and failing to direct viewers to the sources of the research is an act of federal statutory and common law unfair competition that deprives Plaintiffs of visitors to the website and Hein of her reputation as the actual producer of the research.

In addition, as Mai admits, if the Lanham Act claim is proper, a common law claim for unfair competition is proper subject matter to present to the trier of fact. Motion at 21, citing *Triple-I Corp. v. Hudson Assoc Consulting, Inc.* 713 F. Supp 2d 1267, 1286 (D.Kan. 2010).

### V.   Volga German Research, LLC is a proper party to the lawsuit

While it's true that VGR LLC may not hold a copyright interest as an exclusive licensee that would permit it to sue for copyright infringement, its involvement in managing and funding the website provide a basis for a claim for common law unfair competition and entitle it to equitable relief and damages based on unjust enrichment for that claim. VGR LLC has demonstrated that Mai denies access to plaintiffs' information on the website owned by VGR LLC when he refuses to cite to that website. Further, as the funder of all of the activities of the plaintiffs and owner of the domain name, VGR LLC has an interest in Hein's reputation and any unfairly competitive use of her name and copyrighted materials. It also has a direct interest in the amount of traffic the website it owns receives. "Traditional proximate-causation principles support those results: As we have observed, a defendant who 'seeks to promote his own interests by telling a known falsehood to *or about* the plaintiff or his product' may be said to have proximately caused the plaintiff's harm." *Lexmark Int'l, Inc. v. Static Control Components, Inc*, 572 U.S. 118, 138 (2014).

In publishing under his own name while relegating Hein to a position of "researcher" or "contributor" and failing to cite the source of the information he copied, namely the VGR Website owned by VGR LLC, Mai has caused VGR LLC reputational harm and a denial of web traffic that rightfully should flow to the VGR Website. VGR LLC has standing to pursue relief against Mai for his acts of unfair competition, so his motion for summary judgment on this basis should be denied.

**VI.    The Statute of Limitations does not bar Hein's copyright claims**

Mai's statute of limitations argument fails for two independent reasons: (1) Hein's claims are timely under the discovery rule, which governs accrual in this Circuit and District; and (2) Mai's republication of infringing material in 2023 constitutes new acts of infringement that independently restart the limitations period. At a minimum, material factual disputes preclude summary judgment on this defense.

Although the Supreme Court has not definitively resolved whether the discovery rule governs accrual of copyright claims under 17 U.S.C. § 507(b), it has acknowledged that many circuits apply the rule and that it has not yet passed on the question. *Petrella v. MGM*, 572 U.S. 663, 670 n.5 (2014); *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 374 (2024) (assuming, without deciding, that the discovery rule applies).

The Tenth Circuit has long applied the discovery rule in copyright cases, holding that a claim accrues when the copyright owner has "knowledge of a violation or is chargeable with such knowledge." *Diversey v. Schmidly*, 738 F.3d 1196, 1200 (10th Cir. 2013). The District of Kansas has expressly reaffirmed this rule after *Petrella*: "The Tenth Circuit has long applied the discovery rule of accrual in the copyright context, meaning that the claim accrues when the copyright owner has 'knowledge of a violation or is chargeable with such knowledge.'" *Energy Intelligence Group, Inc. v. CHS McPherson Refinery, Inc.*, 300 F. Supp. 3d 1356, 1365 (D. Kan. 2018).

Here, Hein's claims are timely under this well-established rule. The uncontroverted record shows that Hein first discovered the full scope of Mai's copying in late 2023. In November 2023, Hein discovered for the first time that Mai's website could be searched using the term "Maggie Hein." Previously she understood only that one could search by the surname of the Volga German individuals researched. When she ran this search in November 2023, she found 339 references to

her name. Reviewing these references one by one, she learned for the first time of the extent and verbatim nature of Mai's continuing copying and that he was copying photographs. At no time prior to November 2023 was she aware or could she have been aware that Mai had copied almost all of the textual materials she had posted between 2017 and the date of her discovery. Nor was she aware or could she have been aware that Mai had copied 20 photographs from her Facebook page and website.

At a minimum, whether Hein should have discovered the infringements earlier is a fact question that cannot be resolved on summary judgment. See *Energy Intelligence*, 300 F. Supp. 3d at 1368 (reasonableness of plaintiff's inquiry or lack thereof is a fact question for the jury).

Mai's argument also fails because his own conduct independently restarts the limitations clock. It is well-settled that each new act of reproduction or distribution of an infringing work constitutes a new wrong that gives rise to a new claim. *Petrella*, 572 U.S. at 671 ("Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrues' at the time the wrong occurs.").

Here, Mai has operated multiple iterations of his website at different URLs, each time copying the infringing content onto a new site. Most recently, in late 2023, Mai again republished his entire website under a new domain: volgagermaninstitute.org. This republication alone independently preserves Hein's claims as to all materials appearing on that site. Under *Petrella*, this republication constitutes a new act of infringement with a fresh accrual date.

Mai's limitations defense fails as a matter of law. The discovery rule governs and makes Hein's claims timely. Mai's republication and ongoing updates are new acts of infringement. At a minimum, genuine issues of material fact remain regarding Hein's discovery date and the effect

of Mai's republication — issues unsuitable for resolution on summary judgment. Mai's request for summary judgment on this basis should be denied.

**VII.    Plaintiffs are entitled to damages and an injunction for infringement of her photos**

The entire gist of Mai's argument on this issue is that Hein is not entitled to "statutory damages or attorneys' fees" for her claims relating to Mai's infringement of her eight photos registered for copyright. Hein does not seek statutory damages for the infringement of her photos. She seeks equitable relief and damages based a theory of unjust enrichment. *See* Doc. 59 at 16-17. If she prevails on this count, the copyright statute entitles her to an award of attorneys' fees. 17 U.S.C. §505. Mai's request for summary judgment on this basis should be denied.

## Conclusion

Defendant's Motion for Summary Judgment is not a good use of the parties' or the court's time. All of the issues raised, except portions of the final one which is moot, are subject to denial because they are grounded in clearly contested material issues of fact and, in some cases, based on Mai's misunderstanding or misapplication of the relevant law.

Respectfully Submitted,
Attorneys for Plaintiffs

/s/ Todd N. Tedesco
Todd N. Tedesco, #15652
Graybill & Hazlewood LLC
218 N. Mosley
Wichita, KS 67202-2806
316-266-4058
Email: todd@graybillhazlewood.com

Catherine Simmons-Gill (pro hac vice)
Offices of Catherine Simmons-Gill, LLC
33 N. LaSalle St., Ste. 1150
Chicago, Illinois 60602
Tel: 312-609-6611
IL ARDC: 2159058
Email: simmonsgill@gmail.com

33

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was filed via the Court's CM/ECF system this 12th day of June, 2025, which sent electronic notice to all counsel of record.

<u>/s/ Todd N. Tedesco</u>
Todd N. Tedesco, #15652